## IN THE UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF TEXAS
## HOUSTON DIVISION

| | | |
|---|---|---|
| JAMES LEE ALLEN, | § | |
| | § | |
| Petitioner, | § | |
| | § | |
| VS. | § | CIVIL ACTION NO. H-05-4333 |
| | § | |
| NATHANIEL QUARTERMAN, | § | |
| | § | |
| Respondent. | § | |

## MEMORANDUM AND OPINION

Petitioner, James Lee Allen, seeks habeas corpus relief under 28 U.S.C. § 2254,

challenging a 2003 state felony conviction for murder.  The respondent filed an answer to

the petition and motion to dismiss, (Docket Entry No. 9), with a copy of the state court

record.  As his response, Allen filed copies of several documents relating to his guilty plea.

(Docket Entry No. 10).  Based on careful consideration of the pleadings; the motion and

response; the record; and the applicable law, this court grants the respondent's motion and,

by separate order, enters final judgment.  The reasons are set out below.

### I.     Background

On December 14, 2001, the grand jury of San Jacinto County, Texas returned an

indictment charging as follows:

> . . . James Lee Allen, hereafter styled Defendant, on or about
> the 14th day of November A.D. 2000, and before the
> presentment of this indictment, in the County and State
> aforesaid, did then and there intentionally and knowingly cause

the death of an individual, namely Mitchell Turner Byrd, by
striking him on the head with a hammer.

*Ex parte Allen*, Application No. 43,790-03 at 62.

Allen pleaded guilty to the first-degree felony offense of murder. (Cause Number
8546-A). On June 4, 2003, the court sentenced Allen to twenty-four years in prison. Allen
did not appeal. Allen filed an application for state habeas corpus relief on April 29, 2004,
which the Texas Court of Criminal Appeals denied without written order, on findings of the
trial court, without a hearing, on November 9, 2005. *Ex parte Allen,* Application No.
43,790-03 at cover. On December 22, 2005, this court received Allen's federal petition.
Allen contends that his conviction is void because he did not knowingly and voluntarily enter
his guilty plea and his counsel rendered ineffective assistance. (Docket Entry No. 1, Petition
for Writ of Habeas Corpus, p. 3). Each claim is analyzed below.

## II.   The Applicable Legal Standards

Allen's petition is governed by the Anti-Terrorism and Effective Death Penalty Act
of 1996 (AEDPA). Subsections 2254(d)(1) and (2) of AEDPA set out the standards of
review for questions of fact, questions of law, and mixed questions of fact and law that result
in an "adjudication on the merits." An adjudication on the merits "is a term of art that refers
to whether a court's disposition of the case is substantive, as opposed to procedural." *Miller
v. Johnson,* 200 F.3d 274, 281 (5th Cir. 2000).

The AEDPA provides as follows, in pertinent part:

(d)  An application for a writ of habeas corpus on behalf of a
person in custody pursuant to the judgment of a State court shall

not be granted with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim–

> (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States;  or
>
> (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

(e)

> (1)  In a proceeding instituted by an application for a writ of habeas corpus by a person in custody pursuant to the judgment of a State court, a determination of a factual issue made by a State court shall be presumed to be correct.  The applicant shall have the burden of rebutting the presumption of correctness by clear and convincing evidence.

A state-court determination of questions of law and mixed questions of law and fact is reviewed under 28 U.S.C. § 2254(d)(1) and receives deference unless it "was contrary to, or involved an unreasonable application of clearly established Federal law, as determined by the Supreme Court of the United States." *Hill v. Johnson,* 210 F.3d 481, 485 (5th Cir. 2000). A state-court decision is "contrary to" Supreme Court precedent if: (1) the state court's conclusion is "opposite to that reached by [the Supreme Court] on a question of law" or (2) the "state court confronts facts that are materially indistinguishable from a relevant Supreme Court precedent" and arrives at an opposite result. *Williams v. Taylor,* 120 S. Ct. 1495 (2000). A state court unreasonably applies Supreme Court precedent if: (1) it unreasonably applies the correct legal rule to the facts of a particular case; or (2) it "unreasonably extends

3

a legal principle from [Supreme Court] precedent to a new context where it should not apply

or unreasonably refuses to extend that principle to a new context where it should apply." *Id.*

at 1495.  The issue is whether the state-court was "objectively unreasonable." *Id.* at 1495;

*Penry v. Johnson,* 215 F.3d 504, 508 (5th Cir. 2000).  Fact findings by the state court are

"presumed to be correct . . . and [receive] deference . . . unless . . . based on an unreasonable

determination of the facts in light of the evidence presented in the State court proceeding.'"

*Hill,* 210 F.3d at 485 (quoting 28 U.S.C. § 2254(d)(2)).

Allen is proceeding *pro se*.  *Pro se* habeas petitions are construed liberally and are not

held to the same stringent and rigorous standards as pleadings filed by lawyers. *See Martin*

*v. Maxey,* 98 F.3d 844, 847 n.4 (5th Cir. 1996); *Guidroz v. Lynaugh*, 852 F.2d 832, 834 (5th

Cir. 1988); *Woodall v. Foti,* 648 F.2d 268, 271 (5th Cir. Unit A June 1981).  Allen's state

and federal habeas petitions are broadly interpreted. *Bledsue v. Johnson,* 188 F.3d 250, 255

(5th Cir. 1999).

## III.    The Claim as to the Voluntariness of the Guilty Plea

Allen claims that his guilty plea was involuntary because his counsel did not tell him

in advance that the State had only offered a twenty-four year sentence.  Allen claims that he

first learned of the State's offer when he entered his plea.  (Docket Entry No. 1, Petition for

a Writ of Habeas Corpus, p. 7).

The record shows that on June 4, 2003, Allen appeared in open court and entered a

plea of guilty. *Ex parte Allen,* Application No. 43,790-03 at 62.  The court admonished

Allen, orally and in writing, as to the nature of the offense charged – murder committed on

November 14, 2000 – and the punishment range.   Allen signed a document entitled "Stipulation and Waivers."   Allen waived his right to a jury trial, the right to have time to prepare for trial, and the right to file a motion for new trial. *Ex parte Allen,* Application No. 43,790-03 at 76-77.   Allen received the following admonishments: he was charged with the offense of murder; the range of punishment was five to ninety-nine years and a fine of $10,000; any recommendation of the prosecutor as to punishment was not binding on the court; and if the punishment did not exceed the recommendation of the prosecutor, Allen would not be allowed to appeal any matter not raised by written motion before trial.   The court accepted Allen's plea after finding that he was competent.

Allen signed a separate document entitled "Stipulation of Evidence."   By signing that document, Allen consented to the stipulation of evidence; waived his right to the appearance, confrontation, cross-examination of witnesses; consented to the introduction of testimony by oral stipulation; and waived state and federal constitutional rights against self-incrimination.   Allen stated that he was the person named in the indictment and that the allegations were correct.   Allen admitted that on November 14, 2000, he intentionally and knowingly caused the death of Mitchell Turner Byrd by striking him on the head with a hammer. *Ex parte Allen,* Application No. 43,790-03 at 78.

Allen's counsel stated that he had explained the waivers, stipulations, and admonishments to Allen before he signed those documents. *Ex parte Allen,* Application No. 43,790-03 at 78.   The trial court found that Allen had signed the documents voluntarily and

intelligently. The court approved Allen's waiver of jury trial, stipulation of evidence, and accepted the guilty plea. *Ex parte Allen,* Application No. 43,790-03 at 79.

In this federal habeas motion, Allen has provided a copy of the transcript of the guilty plea hearing held on June 4, 2003. (Docket Entry No. 10, Ex. 4, pp. 1-10). In the hearing, Allen told the judge that he had never been declared mentally incompetent; he had never been committed to a mental hospital; he was sober; he was not currently under the influence of drugs or alcohol; and the medication he was taking did not affect his ability to understand the proceedings or his ability to communicate with his attorney. (*Id.* at 3-4). Allen stated that he had retained Donald Ervin as his counsel and that he was satisfied with the legal advice and representation Ervin had provided. (*Id.* at 4). Defense counsel Ervin also testified at the June 4, 2003 hearing. Ervin testified that, based on his conversations with Allen and his observations of his client, he concluded that Allen was competent. (*Id.* at 4-5).

At the June 4, 2003 hearing, Allen testified that no one had threatened him to plead guilty and that no one had promised him anything to plead guilty. (*Id.* at 5). Allen acknowledged that he had signed the document entitled "Stipulation of Evidence." (*Id.* at 6). Allen stated that by signing the document, he was admitting that he was the person named in the indictment and that he had committed the offenses alleged in the indictment. (*Id.*). Allen confirmed that he had waived his right to a jury trial and his right to file a motion for new trial. (*Id.* at 6-7). The judge asked Allen if he wanted an explanation of the waivers. Allen said, "No," stating that his counsel had explained the waivers to his satisfaction. The judge told Allen that he would follow the prosecutor's recommendation of

6

twenty-four years and asked if Allen still wanted to enter his guilty plea.  Allen said that he did want to enter the plea.  (*Id.* at 9).

The court found Allen guilty of murder in Cause Number 8546 and imposed a sentence of twenty-four years with 631 days of jail credit.  Following the pronouncement of judgment, Allen stated that he had no questions and nothing to say.  (*Id.* at 9).

By signing each of the documents and in his plea colloquy, Allen stated that he understood the nature of the charge against him and the consequences of his plea.  "Solemn declarations in open court carry a strong presumption of verity," forming a "formidable barrier in any subsequent collateral proceedings."  *United States v. Cervantes,* 132 F.3d 1106, 1110 (5th Cir. 1998) (quoting *Blackledge v. Allison,* 431 U.S. 63, 73-74 (1977)).  The state trial court determined that Allen had entered his plea knowingly and voluntarily after discussing the case with his attorney.  The documents that make up the record are entitled to a presumption of regularity under 28 U.S.C. § 2254(e).  *See Carter v. Collins,* 918 F.2d 1198, 1202 n.4 (5th Cir. 1990).

The state habeas court found that "[t]he voluntary plea of guilt was not unlawfully induced because the Applicant understood the nature of the charge and the consequences of the plea." *Ex parte* Allen, Application No. 43,790-03 at 17, Finding #1.  On habeas review, the federal courts are bound by the credibility choices made by the state court.  *Hogue v. Johnson,* 131 F.3d 466, 505 (5th Cir. 1997).  The Texas Court of Criminal Appeals denied relief on Allen's claim for postconviction relief.  As a federal court in a habeas proceeding, this court is required to grant a presumption of correctness to the state court's explicit and

implicit fact findings, if supported by the record. *Loyd v. Smith,* 899 F.2d 1416, 1425 (5th Cir. 1990). The state-court record fairly supports the explicit finding that Allen's guilty plea was voluntary. The record shows that Allen voluntarily entered a guilty plea after consulting with counsel. The state court's decision to deny relief was not contrary to clearly established federal law, as determined by the Supreme Court of the United States. Allen's claim for habeas relief based on the involuntariness of his guilty plea lacks merit. 28 U.S.C. § 2254(d)(1).

## IV.    The Claim of Ineffective Assistance of Counsel

Allen claims that he did not knowingly and voluntarily enter his guilty plea because he did not receive effective assistance of counsel. Allen asserts that his counsel told him that he would be eligible for release to parole within six to eight years. Allen claims that this was a misstatement of parole law. Allen also contends that he was in handcuffs when his counsel presented the plea papers in the courtroom and that he could not read the plea papers. Allen contends that his counsel asked him to sign the plea papers without explaining the waivers. Finally, Allen asserts that through nonverbal signals, counsel told him how to answer the court's questions during the guilty plea hearing. (Docket Entry No. 1, Petition for a Writ of Habeas Corpus, p. 7).

In *Hill v. Lockhart,* 474 U.S. 52 (1985), the Supreme Court held that the two-part test set forth in *Strickland v. Washington,* 466 U.S. 668 (1984), applies to cases involving guilty pleas. To prevail on a claim of ineffective assistance of counsel, a petitioner must show that: (1) his counsel's actions fell below an objective standard of reasonableness; and (2) the

ineffective assistance of counsel prejudiced him. *Id.*; *Moawad v.Anderson,* 143 F.3d 942, 946 (5th Cir. 1998). A court may resolve a claim by finding either that counsel rendered reasonably effective assistance or that there was a lack of prejudice. There is no need to reach both components of the inquiry if the defendant makes an insufficient showing on one. *Strickland,* 466 U.S. at 697.

In assessing the reasonableness of counsel's performance, a court presumes that the performance falls within the "wide range of reasonable professional assistance" and that "the challenged action might be considered sound trial strategy." *Strickland,* 466 U.S. at 689; *Gray v. Lynn,* 6 F.3d 265, 268 (5th Cir. 1993). If counsel's action is based on well-informed strategic decisions, it is "well within the range of practical choices not to be second-guessed." *Rector v. Johnson,* 120 F.3d 551, 564 (1997) (quoting *Wilkerson v. Collins,* 950 F.2d 1054, 1065 (5th Cir. 1992), *cert. denied,* 509 U.S. 921 (1993)).

In the context of a guilty plea, prejudice is present if there is reasonable probability that absent counsel's errors the defendant would not have entered a guilty plea and would have insisted on a trial. *United States v. Payne,* 99 F.3d 1273, 1282 (5th Cir. 1996); *Mangum v. Hargett,* 67 F.3d 80 (5th Cir. 1995), *cert. denied,* 516 U.S. 1133 (1996). A reasonable probability is a probability sufficient to undermine confidence in the outcome. *Strickland,* 466 U.S. at 694.

The test for determining the validity of a guilty plea is "whether the plea represents a voluntary and intelligent choice among the alternative courses of action open to the defendant." *North Carolina v. Alford,* 400 U.S. 25, 31 (1970); *see Boykin v. Alabama,* 395

9

U.S. 238, 242 (1969); *Machibroda v. United States,* 368 U.S. 487, 493 (1962). The offense, the relevant inquiry is whether counsel's performance interfered with Allen's ability to understand the nature of the charges against him and the consequences of his plea. Once a guilty plea has been entered, nonjurisdictional defects in the proceedings against the defendant are waived, including all claims of ineffective assistance of counsel except insofar as the alleged ineffectiveness relates to the voluntariness of the guilty plea. *Smith v. Estelle,* 711 F.2d 677, 682 (5th Cir.), *cert. denied sub nom. Smith v. McKaskle,* 466 U.S. 906 (1984).

The record shows that Allen stated, in court, and in writing, that he had discussed the court's written admonishments with his attorney and understood them, and that he was satisfied with the representation trial counsel had provided. *Id.* at 98. These documents are entitled to a presumption of regularity under 28 U.S.C. § 2254(e).

In his affidavit to the state habeas court, defense counsel stated that:

> In response to Applicant's allegation that I "never told applicant that the State's offer was 24 years and applicant had no knowledge of the State's offer until he came before the bench to enter his plea," I deny that this is true.
>
> Defendant was well aware of the State's offer. I talked to Defendant, both in the jail and in the courtroom about the offer. The plea papers were discussed with him and he read them before signing.
>
> In the process of discussing the recommended plea with the Applicant, I told him that I believed that the evidence in the case was such that the jury would convict him. I also expressed concern that if the case were pressed to trial that the possibility existed that the State would re-file as a capital murder due to the murder/robbery aspect of the case.

Case 4:05-cv-04333   Document 15   Filed in TXSD on 08/08/07   Page 11 of 17

After numerous discussions with the State, we agreed on a recommendation of 24 years. Due to the gruesome, violent nature of the crime and other significant factors, I believed that this was the lowest recommendation attainable. It was not an appropriate case to go to the Court for punishment.

I advised Applicant of this and advised him to accept the recommendation. He asked me when he would be eligible for parole. I told him in no uncertain terms that I was not a parole expert and would not tell anyone how much time they would serve on a given sentence. However, I told him that if the judge did not make an affirmative finding of a deadly weapon that I thought that would help his parole situation. In further negotiations, I received an agreement from the prosecution that he would make no objection to the Court not making this finding. Ultimately, the Court did not make the affirmative finding. I thought this would help Applicant at the time, but did not know that the parole law had changed to require a defendant to serve one-half of any murder sentence without regard to a finding of deadly weapon.

I continued to caution him that I was not a parole expert and would not make any promises concerning how long he would serve on his sentence. I also assured him that I believed that this was the lightest sentence he could receive in this case and that I was recommending it without regard to the parole situation.

As I remember, we did discuss the possibility of serving 6 or 8 years before parole, but I made it clear to Applicant that these were numbers that I, or anyone else for that matter, could not guarantee. Applicant understood and was in agreement with me that the 24-year sentence was his best option without regard to parole.

Applicant had previously entered pleas of guilty and was well aware of what he was doing standing before the bench. He knew what the judge was asking him and responded appropriately. His plea was voluntary and informed. I have no memory of "indicating" answers to Applicant at the time of the plea.

*Ex parte Allen,* Application No. 43,790-03 at 14-16.

Allen provides the affidavit of Peter E. Ryba, who represented him during state habeas proceedings. Ryba testified that the state habeas court ordered Allen to file a response within thirty days of the date defense counsel filed his affidavit. Allen filed his response within the thirty-day period, and the state habeas court made adverse findings based on Allen's procedural default. (Docket Entry No. 10, Ex. 1, pp. 1-2).

Allen also provides an affidavit from his parents, James Thomas Allen and Joanne Allen. They testified that they met with counsel on June 3, 2003. They believed that their son's case was set for trial the following Monday. They assert that although defense counsel knew that they wanted to be present at all proceedings, they were not told of the plea hearing or allowed to be present. Counsel later called to tell them that their son had entered a plea and would be eligible for parole in six years. (Docket Entry No. 10, Ex. 2, p. 1).

In *Brady v. United States,* 397 U.S. 742 (1970), the Supreme Court stated:

> The standard as to the voluntariness of guilty pleas must be essentially that defined by Judge Tuttle of the Court of Appeals for the Fifth Circuit: "[A] plea of guilty entered by one fully aware of the direct consequences, including the actual value of any commitments made to him by the court, prosecutor, or his own counsel, must stand unless induced by threats (or promises to discontinue improper harassment), misrepresentation (including unfulfilled or unfulfillable promises), or perhaps by promises that are by their nature improper as having no proper relationship to the prosecutor's business (*e.g.,* bribes)."

*Id.* at 147. If a defendant can show that the court, the prosecutor, or defense counsel induced a guilty plea by clearly and unequivocally guaranteeing a lesser sentence or some other

specific leniency, the guilty plea is not voluntary unless the defendant receives what was promised. *See United States v. Amaya,* 111 F.3d 386, 388-89 (5th Cir. 1997) (holding that the district court's legally unfulfillable promise to impose sentence as though the government had moved for a downward departure rendered the defendant's guilty plea involuntary); *Davis v. Butler,* 825 F.2d 892, 894-95 (5th Cir. 1987) (remanding for evidentiary hearing to determine if defense counsel guaranteed that if the defendant pleaded guilty he would be pardoned in three years). The defendant must generally establish that an actual promise or guarantee was made by showing: (1) the exact terms of the alleged guarantee; (2) exactly when, where and by whom the guarantee was made; and (3) the identity of any eyewitnesses to the guarantee. *DeVille v. Whitley,* 21 F.3d 654, 658 (5th Cir. 1994).

A guilty plea is not made involuntary by the defendant's subjective understanding that he would receive a lesser sentence. In other words, if the defendant's expectation of a lesser sentence did not result from a promise or guarantee by the court, the prosecutor, or defense counsel, the guilty plea stands. *See Spinelli v. Collins,* 992 F.2d 559, 561-62 (5th Cir. 1993) (defendant's mistaken belief that he would be placed on probation or into boot camp for a few months, did not render his guilty plea involuntary because his misunderstanding did not result from promise by court, prosecutor or defense counsel). A guilty plea is not rendered involuntary because the defendant's misunderstanding was based on defense counsel's inaccurate prediction that a lesser sentence would be imposed. *See Harmason v. Smith,* 888 F.2d 1527, 1532 (5th Cir. 1989) (defense counsel's statement that the defendant would probably receive less than a fifteen year sentence did not render the guilty plea involuntary

because a "prediction, prognosis, or statement of probabilities . . . does not constitute an 'actual promise'."); *United States v. Stumpf,* 827 F.2d 1027, 1030 (5th Cir. 1987) ("A defendant's reliance on his attorney's erroneous prediction of leniency is not sufficient to render a guilty plea involuntary."); *Self v. Blackburn,* 751 F.2d 789, 793 (5th Cir. 1985) (defense counsel's statement that parole would be probable after 10½ years did not render the guilty plea involuntary because it was a mere prediction, not a guarantee); *Johnson v. Massey,* 516 F.2d 1001, 1002 (5th Cir. 1975) ("Petitioner's allegation of a breached bargain is premised on the alleged statement to him by his own attorney that the sentencing judge generally gave sentences of about 20 years in second degree murder cases and that petitioner, as a first offender, might expect such a sentence. However, a good faith but erroneous prediction of a sentence by a defendant's counsel does not render the guilty plea involuntary.").

Allen asserts that his counsel told him he would be eligible for release to parole in six years. Allen was serving a sentence for murder, an offense described by article 42.12, Section 3g(a)(1)(A).[1] Allen was required to serve one-half of his twenty-four year sentence before becoming eligible for release to parole. Counsel admits that he mistakenly believed

---

[1] "An inmate serving a sentence for an offense described by Section 3g(a)(1)(A), (C), (D), (E), (F), (G), or (H), Article 42.12, Code of Criminal Procedure, . . . is not eligible for release on parole until the inmate's actual calender time served, without consideration of good conduct time, equals one-half of the sentence or 30 years, whichever is less, but in no event is the inmate eligible for release on parole in less than two calender years." TEX. GOV'T CODE ANN. § 508.145(d). Texas Code of Criminal Procedure article 42.12, Section 3g(a)(1)(A) refers to Section 19.02 of the Penal Code, Murder.

that the absence of a deadly weapon finding would permit Allen to be considered for parole at an earlier date. *Ex parte Allen,* Application No. 43,790-03 at 15. Counsel testified that he repeatedly told Allen that he was not a parole expert and would not make any promises concerning how long Allen would serve on his sentence. *Ex parte Allen,* Application No. 43,790-03 at 15-16. Counsel and Allen discussed the possibility of serving six or eight years before parole, but counsel made it clear that he could not guarantee that Allen would be released to parole at a specific time.

Allen's case is like those in which counsel wrongly predicts that a proposed course of action will probably result in a lesser sentence. *United States v. Stumpf,* 827 F.2d 1027, 1030 (5th Cir. 1987); *Self v. Blackburn,* 751 F.2d 789, 793 (5th Cir. 1985); *Johnson v. Massey,* 516 F.2d 1001, 1002 (5th Cir. 1975). The substance of counsel's statement requires its treatment as a "prediction, prognosis, or statement of probabilities," not a clear and unequivocal guarantee of a lesser sentence. *Harmason,* 888 F.2d at 1532. When Allen entered his plea, he was fully aware of the direct consequences: a punishment range of five to ninety-nine years and a fine of $10,000. *Ex parte Allen,* Application No. 43,790-03 at 77. Allen accepted those consequences.

The state habeas court found that defense counsel rendered effective assistance. *Ex parte Allen,* Application No. 43,790-03 at 17, Finding #2. The state court's factual findings are entitled to a presumption of correctness, which Allen has failed to rebut. 28 U.S.C. § 2254(d)(2). The record shows that counsel reviewed the evidence against Allen and advised him about the legal options and their advantages and disadvantages. *Ex parte Allen,*

Application No. 43,790-03   at 15-16.   Based on his review of the evidence and his knowledge of the law, counsel told Allen that he should enter a plea of guilty.  Counsel's actions were based on well-informed strategic decisions.  Allen has not shown that counsel's performance was deficient.

Nor has Allen satisfied the prejudice prong of *Strickland*.  Allen has failed to show that there was a reasonable probability that but for counsel's alleged unprofessional errors, Allen would not have entered a guilty plea.  Allen received a twenty-four-year prison term when he pleaded guilty.  A trial would have exposed him to a prison sentence of up to ninety-nine years.  In the event of a trial, a jury would have learned about Allen's criminal history.  The jury would also have heard about the violent nature of the offense charged.  The prosecutor had the option of and had indicated an intent to, reindict Allen for capital murder had he gone to trial.

On habeas review, the state trial court found that Allen had voluntarily entered his guilty plea. *Ex parte Allen,* Application No. 49,329-01 at 90, Finding 8.  The Texas Court of Criminal Appeals denied habeas relief.  The state court's decision to deny relief was not contrary to clearly established federal law, as determined by the Supreme Court of the United States.  28 U.S.C. § 2254(d)(1).  Allen's claim for habeas relief based on the ineffective assistance of counsel lacks merit.

## V.    Conclusion

Respondent's motion to dismiss, (Docket Entry No. 9), is granted.  Allen's petition for a writ of habeas corpus is denied.  This case is dismissed.  Any remaining pending motions are denied as moot.

Under the AEDPA, a petitioner must obtain a certificate of appealability before he can appeal the district court's decision.  28 U.S.C. § 2253(c)(1).  This court will grant a COA only if the petitioner makes "a substantial showing of the denial of a constitutional right." 28 U.S.C. § 2253(c)(2).  In order to make a substantial showing, a petitioner must demonstrate that "reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong."  *Slack v. McDaniel,* 529 U.S. 473, 484 (2000).

As the Supreme Court made clear in its decision in *Miller-El v. Cockrell,* 537 U.S. 322, 336 (2003), a COA is "a jurisdictional prerequisite," and "until a COA has been issued federal courts of appeals lack jurisdiction to rule on the merits of appeals from habeas petitioners."  When considering a request for a COA, "[t]he question is the debatability of the underlying constitutional claim, not the resolution of that debate."  *Id.* at 325.  Because Allen has not made the necessary showing, this court will not issue a COA.

SIGNED on August 8, 2007, at Houston, Texas.


Lee H. Rosenthal
United States District Judge

P:\CASES\prisoner-habeas\2005\05-4333.c02.wpd

17